UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

CYNTHIA COONES, individually and as
surviving parent and representative of the
Estate of Jace Coones, deceased,

     Plaintiff,

v.

BEVERLY COGBURN, et al.,

     Defendants.

No. 1:22-CV-090-H

## **ORDER**

This case stems from the tragic death of Jace Coones, a former Texas prisoner, who allegedly died of heat exhaustion.  Seeking damages, his mother, Cynthia Coones,[1] originally brought suit against multiple defendants, including the leader of the Texas Department of Criminal Justice, several nurses and one doctor, Texas Tech University Health Sciences Center (TTUHSC), Mitchell County, Mitchell County Hospital District (MCHD), and the State of Texas.  She brings claims under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and state law.  The defendants previously moved to dismiss the plaintiff's First Amended Complaint (FAC),[2] and the Court dismissed it.  The Court, though, granted her leave to amend.

The plaintiff soon filed her Second Amended Complaint (SAC).  The defendants have now moved to dismiss the SAC, and briefing is ripe.  *See* Dkt. Nos. 80 (the SAC); 81–88 (the various motions to dismiss); 91 (the plaintiff's response); 92–94 (the various replies).

---

[1] To effectively distinguish between Ms. Coones and Jace Coones, the Court refers to Ms. Coones as "the plaintiff" throughout.

[2] The plaintiff also amended her complaint as a matter of course.  *See* Dkt. No. 21.

The Court dismisses the SAC in its entirety.  Besides failing to assert new factual allegations, the SAC's allegations are conclusory in many respects and fall short in multiple ways.  The Court also dismisses the non-moving defendants because the plaintiff has failed to prove service as ordered.  *See* Dkt. No. 47.  Given that this is now the plaintiff's third attempt at pleading her best case, she has been represented throughout these proceedings, and the Court has already dismissed her claims once, the Court denies her request for further leave to amend.   *See* Dkt. No. 91 at 18.

## 1.     Factual and Procedural Background

### A.      The Factual Allegations[3]

In 2020, Jace Coones was a 38-year-old TDCJ inmate at the Wallace Unit in Colorado City, Mitchell County, Texas.  Dkt. No. 80 ¶ 26.  He suffered from asthma and allergies—conditions that the plaintiff alleges prison officials were aware of via medical forms.  *Id.*  The Wallace Unit does not have air conditioning in many areas, including most cells.  *Id.* ¶ 27.  According to the plaintiff, these spaces reach temperatures in the 90s and 100s for many hours at a time.  *Id.*  Mr. Coones's cell did not have air conditioning.  *Id.*

On August 8, 2020, Mr. Coones was taken to the Mitchell County Hospital.[4]  *Id.* ¶ 28.  A few days later on August 13, Mr. Coones was once again taken to the Mitchell

---

[3] At this procedural stage, the Court must take as true the factual allegations from the SAC and view them in the light most favorable to the plaintiff.  *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

[4] It is unclear whether the inclusion of this allegation was an error.  The plaintiff's allegations do not elaborate any further on the reason for, or length of, the visit.  *See id.*

County Hospital, after he passed out from dehydration as a result of the heat.  *Id.* ¶ 33.  On August 15, Mr. Coones was returned to the Wallace Unit in stable condition.  *Id.*

On August 28, the temperature reached a low of 79 degrees in Colorado City and was over 100 degrees from 12:20 PM to 7:50 PM, reaching a high of 106 degrees.  *Id.* ¶ 34. According to the amended complaint, "[Mr. Coones's] cell was as hot or hotter than the outside."  *Id.*  At some point that day, Mr. Coones informed the plaintiff that "he was very hot and [] had been to medical several times due to the heat."  *Id.* ¶ 35.

On August 28 at 4:30 p.m., Mr. Coones walked into the Wallace Unit's medical unit. *Id.*  He complained about the heat to Beverly Cogburn, the Facility Health Service Administrator at the Wallace Unit who was allegedly in charge of inmate health services. *Id.* ¶¶ 35–36.  Mr. Coones told her that he needed to cool off because it was too hot in his cell.  *Id.* ¶ 35.  He also informed the staff that he wanted to shower and be moved to different housing.  *Id.*  Cogburn checked his pulse and respiration rates.  *Id.*  According to the Complaint, Mr. Coones's pulse was a resting 103 and his respirations were 98 per minute.  *Id.*  Normally, his pulse was 80, and his respirations per minute were 18.  *Id.*  The plaintiff alleges that these values were highly abnormal and indicated a serious condition. *Id.*  At the time, Mr. Coones weighed 216 pounds.  *Id.*

Cogburn allowed Mr. Coones to rest on a gurney.  *Id.* ¶ 36.  She reported that Mr. Coones told her that his cell was too hot.  *Id.*  Cogburn also checked Mr. Coones's skin and reported that it was warm and dry.  *Id.*  The plaintiff alleges that Cogburn knew "from her nursing training" that dry skin is a sign of dehydration.  *Id.*  At some point, Cogburn told Mr. Coones to leave, but he did not because he "fear[ed] . . . returning to his overheated cell."  *Id.*  Cogburn called a security supervisor who returned Mr. Coones to his cell.  *Id.*

This is despite, as the plaintiff alleges, the fact that Cogburn was "aware of his allergies- and asthma-related breathing issues." *Id.*

On August 29, the temperature overnight never sank below 83 degrees in Colorado City. *Id.* ¶ 37. It was over 100 degrees for approximately four hours in the afternoon, reaching a high of 104 degrees. *Id.*

On August 30, at around 6:29 a.m., Christi R. Baker wrote the following in capital letters in Mr. Coones's medical records:

> OFFENDER IS IN HIS CELL ROLLING AROUND ON THE FLOOR NAKED. OFFENDER IS NOT VERBALIZING PAIN AND NO RESPIRATORY DISTRESS IS NOTED. OFFENDER DOES NOT VERBALIZE TO NURSING OR SECURITY BUT DOES RESPOND TO VERBAL STIMULI. THE OFFENDER HAS BEEN OFFERED FOOD FROM MEAL SERVICE AND THERE ARE 4 FULL TRAYS IN THE CELL ON THE FLOOR THAT HAS [sic] NOT BEEN TOUCHED. THIS NURSE ENCOURAGED THE OFFENDER TO GET UP AND GET ON WITH HIS DAY WITHOUT RESPONSE TO SUGGESTIONS. SECURITY WAS ADVISED TO LET MEDICAL KNOW IF THE OFFENDERS [sic] CONDITION WORSENS OR CHANGES IN ANY WAY.

*Id.* ¶ 38. The plaintiff alleges that Mr. Coones "was suffering from heat stroke and heat exhaustion" at the time. *Id.* ¶ 39. She also alleges that "Cogburn[5] was aware of [Mr. Coones's] condition and that he needed immediate treatment for overheating and dehydration." *Id.* Additionally, "[d]espite seeing 4 trays of uneaten food" and a non-verbal inmate, the plaintiff alleges that Baker "did not provide for or facilitate the provision of any care," such as "transportation to an air[-]conditioned room, cooling blankets or cold, wet

---

[5] It appears as if this should be an allegation against Baker, but the SAC uses Cogburn, so the Court takes it as it is. *See* Dkt. No. 80 ¶ 39.

towels, intravenous fluids, transport to the emergency room for such treatment, . . . supplemental oxygen, an inhaler, or extra rest time in a cool room." *Id.* ¶¶ 39–40.

The plaintiff also alleges that other medical-care providers at the facility—including Christine Heady, Jennifer Aguilar, Olivia Herrera, Susan Boedeker, Dr. Baker, and Morris—were all "aware of the extreme heat conditions at Wallace and that [Mr.] Coones was suffering from the heat." *Id.* ¶ 41. She claims that he had "informed" them, "complained" about the heat several times, and "show[ed] symptom[s] of overheating to [the] point of being dangerous to his life." *Id.* She also alleges that Mr. Coones "presented increasingly worse and more worrying symptoms of the heat-induced medical problems," but "[t]he specific interactions . . . are unknowable." *Id.*

On August 30, the temperature was 95 degrees for approximately six hours and over 100 degrees for about one hour in the afternoon. *Id.* ¶ 42. According to the SAC, Mr. Coones's cell was as hot—or hotter than—the outside temperatures. *Id.*

The next morning, at around 6:50 a.m. on August 31, Mr. Coones was found dead in his cell. *Id.* ¶ 43. He was lying face down, naked, with his eyes open. *Id.* Rigor mortis had set in, and his body was mottled. *Id.* Mr. Coones had no food in his stomach upon death. *Id.* ¶ 44. His body weighed 192.4 pounds—24 pounds less than his weight at 4:30 p.m. on August 28. *Id.* ¶ 43.

The plaintiff attempted to obtain detailed information and records from the TDCJ about Mr. Coones's death, but she was repeatedly denied. *Id.* ¶ 45. The public Custodial Death Report stated that Mr. Coones had exhibited no medical problems, but, according to the plaintiff, he "obviously [ha]d." *Id.* ¶ 46. An amended public Custodial Death Report

5

was completed that listed his medical cause of death as "unspecified natural causes," but it also stated that Mr. Coones had exhibited no medical problems. *Id.* ¶ 47.

In addition, the plaintiff tried to obtain information about Mr. Coones's death from Warden Hefner. *Id.* ¶ 7. She claims that the warden stated that she "should be 'comforted' that [Mr. Coones] had died 'peacefully in his sleep.'" *Id.* She also alleges that Warden Hefner purposely withheld documents from the medical examiner, which is why the medical examiner included the wrong cause of death. *Id.* ¶ 8. And she alleges that this withholding was purposeful so as to "cover up" Mr. Coones's death and the rampant heat-related issues in the detention center. *Id.*; *see id.* ¶ 41.

The SAC asserts that before August 2020 there had been at least 23 TDCJ inmate deaths due to heat, along with hundreds of illnesses since 1998.[6] *Id.* ¶ 25. She alleges that "TDCJ employees and medical staff" were aware of this information, "including all named [d]efendants." *Id.* The plaintiff also makes two specific claims against Collier and Hefner. First, she claims that Bryan Collier—the Executive Director of the Texas Department of Criminal Justice who "has over 36 years of adult correctional experience in Texas"—"was aware of the many inmate deaths due to heat at Texas prisons yet failed to adopt policies that would have saved [Mr. Coones]." *Id.* ¶ 26. Second, she alleges that Hefner, "as Warden, had control over the deployment of any available remedial measures for the

---

[6] The SAC also cites various articles about the heat issues in TDCJ facilities. *See id.* ¶ 30.

extreme heat that he knew pervaded the prison, but either refused to deploy those measures or did not have any policy providing for the provision of those measures." *Id.* ¶ 49.

### B.    The Lawsuit and Claims

The plaintiff filed suit in June 2022.  Dkt. No. 1.  Several defendants moved to dismiss based on qualified immunity.  Dkt. Nos. 7; 10.  In August 2022, the plaintiff filed an expedited motion to compel the production of certain records, reports, and other documentation.  Dkt. No. 11.  The Court denied the motion, explaining that the Fifth Circuit's holding in *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022), precluded her from seeking discovery while the defendants' motions to dismiss based on qualified immunity remained pending.  Dkt. No. 20 at 6–7.

The plaintiff then filed her FAC.  Dkt. No. 21.  The defendants subsequently moved to dismiss her complaint, and the Court ultimately granted their motions and dismissed the FAC as to the moving defendants.  *See* Dkt. No. 79.  The Court did, however, grant the plaintiff leave to amend her complaint.

The plaintiff then filed her SAC.  Dkt. No. 80.  The SAC's claims and allegations track the FAC closely.  *Compare id. with* Dkt. No. 21.  In the SAC, the plaintiff asserts Section 1983 claims against all of the defendants, arguing that they violated Mr. Coones's Eighth Amendment rights against cruel and unusual punishment.  Dkt. No. 80 ¶¶ 50–54. The plaintiff also reasserts her claims under the Texas Wrongful Death Statute (TWDS) and the Texas Tort Claims Act (TTCA) against all of the defendants.  *Id.* ¶ 56.  And she claims that "Baker and Cogburn are liable for medical malpractice."[7] *Id.* ¶ 57.  She also alleges that

---

[7] While the SAC does not specify whether the "Baker" referred to in Paragraphs 57 and 58 is Christi Baker or Dr. Brad Baker, the plaintiff's response makes clear that the named "Baker" is Christi Baker.  Dkt. No. 91 at 10–13.

"Baker, Cogburn, and the other [d]efendant medical care providers misdiagnosed and/or failed to inform others at the jail, or properly diagnose [Mr. Coones's] condition of dehydration and overheating, failed to pass along the critical information to jailers including informing the jailers to keep [an] eye on [Mr. Coones], delayed his treatment[,] and failed to treat [Mr. Coones] for his conditions[,] which caused great suffering and eventual death."[8] *Id.* ¶ 58.  She also adds that these medical care providers "lacked sufficient training to counteract the medical effects of extreme heat, lacked instructions from policies that should have informed their actions during extreme heat events, and had their actions reviewed and ratified by policymakers." *Id.* ¶ 59.  Finally, the plaintiff asserts claims under the Americans with Disabilities Act[9] against the TDCJ, the State of Texas, Texas Tech University,[10] Mitchell County Hospital District (MCHD), and Mitchell County, Texas.  *Id.* ¶ 61.

### C.    The Pending Motions to Dismiss and the Plaintiff's Response

The remaining defendants— Ms. Baker, Cogburn, Aguilar, Boedeker, Herrera, Morris, Dr. Baker, Heady, Mitchell County, Collier, Hefner, TTUHSC, MCHD, and

---

[8] Although unclear, this allegation could be construed as asserting medical-malpractice claims against the other medical-care providers.  *See* Dkt. No. 80 at ¶ 58.  These other providers are Aguilar, Boedeker, Herrera, Morris, Dr. Baker, and Heady.  *See id.* ¶ 41; Dkt. No. 91 at 10–13.

[9] The Court assumes that the plaintiff is asserting a claim under Title II of the ADA.  *See Hale v. King*, 642 F.3d 492, 499–504 (5th Cir. 2011) (addressing an inmate's claim under Title II of the ADA).

[10] Texas Tech University Health Sciences Center (TTUHSC) has previously noted that the plaintiff erroneously sued it as "Texas Tech University."  Dkt. No. 66 at 1.

Texas—all move to dismiss the SAC under Rule 12(b)(1), Rule 12(b)(6), or both.  Dkt. Nos. 81–88.[11]  In all, eight motions to dismiss remain pending before the Court.

As to the plaintiff's Section 1983 claims, the individual defendants—Ms. Baker, Cogburn, Aguilar, Boedeker, Herrera, Morris, Dr. Baker, Heady, Hefner, and Collier— assert that they are entitled to qualified immunity because the plaintiff has not alleged sufficient facts to support a plausible violation of Mr. Coones's Eighth Amendment rights. Dkt. Nos. 82 at 4–8; 83 at 4–7; 86 at 9–15; 87 at 5–10.  Texas and TTUHSC contend that the Section 1983 claims against them should be dismissed because they are entitled to Eleventh Amendment Immunity.  Dkt. No. 91 at 7–8.  Mitchell County argues that the plaintiff has not plausibly alleged a Section 1983 claim against it.  *See* Dkt. No. 81 at 2–3. MHCD asserts that the plaintiff has failed to sufficiently plead a claim for municipal liability.  *See* Dkt. No. 88 at 3–5.

As to her state-law claims, Texas and TTUHSC argue that they are entitled to sovereign immunity because the TTCA provides a limited waiver of immunity for suits in state court, not federal court.  Dkt. Nos. 84 at 8–10; 85 at 8–10.  MCHD argues that the plaintiff has not alleged facts indicating a waiver of governmental immunity under the TTCA.  Dkt. No. 88 at 7–8.  Mitchell County also appears to argue that the plaintiff has not alleged any facts to support her state-law claims.  Dkt. No. 81 at 3–4.  And all ten of the individual defendants, as employees of the municipal defendants, assert that the claims against them must be dismissed under Section 101.106 of the TTCA because they were

---

[11] The Court granted in part and denied in part Edmundo Cueto's and Jodi Hefner's motion to dismiss (Dkt. No. 83).  Dkt. No. 99.  The Court dismissed the SAC as to Cueto but not as to Hefner.  *See id.*

acting within the scope of their employment, and the suit could have been brought against their employers.  Dkt. Nos. 82 at 12–15; 83 at 11–14; 86 at 8–12; 87 at 10.

As to her ADA claims, the government defendants—Texas, TTUHSC, MCHD, and Mitchell County—all argue that she has not alleged sufficient facts to support a plausible claim.  Dkt. Nos. 81 at 3–4; 84 at 12–19; 85 at 12–19; 88 at 5–8.  Texas and TTUHSC also argue that, because she fails to allege a plausible ADA violation, her claims against them are barred because they have sovereign immunity.  Dkt. Nos. 84 at 17–18; 85 at 18–19.

The plaintiff has responded to all of the motions.  Dkt. No. 91.  She asserts that she has alleged sufficient facts to show that the healthcare defendants—Ms. Baker, Cogburn, Aguilar, Boedeker, Herrera, Morris, Dr. Baker, and Heady—were deliberately indifferent in treating Mr. Coones and that they are therefore liable under Section 1983 and for medical malpractice.  *Id.* at 10–13.  She then argues that Collier and Hefner can be held liable as supervisors because of their deliberate indifference.  *Id.* at 14–15.  The plaintiff next argues that MCHD, Mitchell County, TTUHSC, and Texas can be held liable under *Monell* for refusing to enact policies to protect inmates.  *Id.* at 16–17.  And she argues that these defendants should have also accommodated Mr. Coones's disabilities and that their refusal to do so violates the ADA.  *Id.*  She finally asserts two arguments: (1) that "[t]here is no need to dismiss any of the state law claims for subject matter jurisdiction because they are

arguments in the alternative"; and (2) that "[q]ualified [i]mmunity is a common law defense that has far outlived its usefulness." *Id.* at 17–18.

All of the defendants who moved to dismiss replied to the arguments in the plaintiff's responses. Dkt. Nos. 92–94. The motions are ripe and ready for resolution.

## 2.   Standards of Review

### A.   12(b)(1) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(1), a party may file a motion challenging the Court's subject matter jurisdiction to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court must dismiss the case if it "lacks the statutory or constitutional power to adjudicate" it. *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quotation omitted). The party asserting jurisdiction bears the burden of proof for a Rule 12(b)(1) motion. *Ramming*, 281 F.3d at 161. To satisfy that burden at the pleading stage, the plaintiff need only "allege a plausible set of facts establishing jurisdiction," which the Court must consider as true. *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

### B.   12(b)(6) Motion to Dismiss

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If a complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In resolving a motion to dismiss, a court must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)) (cleaned up). But a court should not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of stating a plausible claim to relief. *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### 3.    Analysis

The plaintiff brings Section 1983 claims against all of the defendants. Dkt. No. 80 ¶¶ 50–54. Additionally, she claims that all of the defendants "are liable under the [TWDS] and the [TTCA]." *Id.* ¶ 56. She also asserts medical-malpractice claims against "[Ms.] Baker and Cogburn." *Id.* ¶ 57. And she appears to assert medical-malpractice claims against "the other medical care providers"—Aguilar, Boedeker, Herrera, Morris, Dr. Baker, and Heady, *id.* ¶ 58—which she repeats in her response, Dkt. No. 91 at 10–13. The defendants move to dismiss her claims under Rule 12(b)(1) and 12(b)(6). Dkt. Nos. 81–88.

The Court takes each cause of action in turn and evaluates the parties' arguments.  The law precludes each claim, so ultimately, the Court concludes that each should be dismissed.

### A.    Section 1983 Claims

First, the plaintiff claims that all of the defendants infringed Mr. Coones's Eighth Amendment right against cruel and unusual punishment in violation of Section 1983.  Dkt. No. 80 ¶¶ 51–52.  Several defendants assert the defense of qualified immunity in their motions and ask the Court to dismiss the plaintiff's Section 1983 claims because she has not alleged a plausible constitutional violation.  Dkt. Nos. 82 at 4–8; 83 at 4–7; 86 at 9–15; 87 at 5–10.

Section 1983 provides a cause of action for plaintiffs when their constitutional or federal statutory rights are deprived by any person acting "under color of any statute, ordinance, regulation, custom, or usage" of the State.  42 U.S.C. § 1983.  "A [S]ection 1983 complaint must plead specific facts and allege a cognizable constitutional violation in order to avoid dismissal for failure to state a claim."  *Mills v. Crim. Dist. Ct. No. 3*, 837 F.2d 677, 678 (5th Cir. 1988).  "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights."  *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).  To establish liability under Section 1983, a plaintiff must satisfy two elements: (1) a deprivation of a federal right, and (2) the person who deprived the plaintiff of that right acted under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

But even if a defendant can be shown to have violated another's constitutional rights, he or she may still not be liable under Section 1983.  Government officials performing

discretionary duties—such as healthcare workers—are entitled to invoke the judicially created doctrine of qualified immunity in response to a plaintiff's Section 1983 suit. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies "when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "This immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Once a defendant raises a qualified-immunity defense, the burden shifts to the plaintiff" to overcome the defense. *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019); *Blakely v. Andrade*, 360 F. Supp. 3d 453, 479 (N.D. Tex. 2019). A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant "violated a constitutional right"[;] and (2) the right at issue was clearly established at the time of the alleged misconduct. *Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up). "There are two ways to demonstrate clearly established law." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021). In the typical case, the plaintiff "identif[ies] a case or body of relevant case law in which an officer acting under similar circumstances . . . was held to have violated the [Constitution]." *Id.* (quotation marks and quotations omitted). This approach "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond

14

debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  In rare cases, however, "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018); *cf. Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) ("Confronted with the particularly egregious facts of this case, any reasonable officer should have realized that [the plaintiff's] conditions of confinement offended the Constitution.").

The Supreme Court has repeatedly instructed lower courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quotation omitted).  Moreover, the Supreme Court has stated that the purpose of the doctrine is to "give[] government officials breathing room to make reasonable but mistaken judgments." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quotation omitted).  "Accordingly, 'qualified immunity represents the norm,' and courts should deny a defendant immunity only in rare circumstances." *Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018)).  "'The issue of qualified immunity is often resolved on summary judgment, but the Court may also consider the issue in a motion to dismiss." *Gill v. Delvin*, 867 F. Supp. 2d 849, 855 (N.D. Tex. 2012) (citing *Iqbal*, 556 U.S. at 677–78).

The plaintiff asserts Section 1983 claims against two alleged policymakers for the extreme heat conditions in the Wallace Unit, numerous doctors and nurses for deliberate indifference in their treatment of Mr. Coones, and several governmental entities under a *Monell* theory of liability.  Dkt. Nos. 80 ¶ 51; 91 at 16–17.  After analyzing each of these

claims, the Court concludes that the plaintiff does not allege a plausible constitutional violation by any of the defendants.

### i. The plaintiff has failed to sufficiently plead a Section 1983 claim against either Collier or Hefner.

The plaintiff asserts Section 1983 claims against Collier and Hefner, Dkt. No. 80 ¶ 51, and each of them has moved to dismiss her claims, Dkt. Nos. 82 at 3–8; 83 at 4–7. The Supreme Court has made clear that parties cannot be held liable on a respondeat-superior theory for purposes of Section 1983.  *Monell*, 436 U.S. at 691.  Instead, "a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation."  *Evett v. DETNFF*, 330 F.3d 681, 689 (5th Cir. 2003) (quotation omitted).

### a. The plaintiff fails to allege sufficient facts for a plausible Section 1983 claim against Collier.

Collier argues that the plaintiff has failed to sufficiently plead her claim against him. *See* Dkt. Nos. 82 at 10–12; 94 at 4–6.  Although the plaintiff has added conclusory language to this claim in response to the Court's dismissal of her FAC, the Court agrees.

After all, as to Collier, the plaintiff's sole allegation is that "he failed to adopt policies that would have saved [Mr. Coones]," specifically, there was no policy to provide remedial measures like "fans, ice water, or daily showers."[12]  Dkt. No. 80 ¶¶ 27, 32.  But it is TDCJ policy to provide those measures.  Collier points to TDCJ's policy of providing remedial

---

[12] The Court previously dismissed the plaintiff's Section 1983 claim against Collier because she did not "allege that there were inadequate remedial measures in place."  Dkt. No. 79 at 20.  The SAC attempts to remedy that shortcoming by arguing that there were no remedial measures available. Dkt. No. 80 ¶ 27.

resources,[13] Dkt. No. 94 at 4–6, and the Court takes judicial notice of that policy.  *See*

*Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (taking judicial notice of information on

a Texas agency's website); *Polnac v. Sulphur Springs*, 555 F. Supp. 3d 309, 324–29 (E.D. Tex.

2021) (taking judicial notice of extraneous evidence in considering a motion to dismiss a

Section 1983 claim).  Because the plaintiff has only alleged a failure to adopt policies to

remediate the extreme heat, and because TDCJ has a policy in place to provide such

services, the Court dismisses the plaintiff's claim against Collier for failure to state a claim.

Were the Court to construe the plaintiff's claim against Collier as pleading the

existence of a "de facto" policy to not provide those items, the result would remain the

same.  Exposure to extreme heat without proper remedial measures is an unconstitutional

condition of confinement.  *Hinojosa v. Livingston*, 807 F.3d 657, 666–67 (5th Cir. 2015).  To

state such a claim, a plaintiff must plead facts that plausibly allege that (1) a condition (2)

that is not reasonably related to a legitimate government objective (3) caused the

constitutional violation.  *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996).  Such a

condition may "reflect an unstated or de facto policy, as evidenced by a pattern of acts or

omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive

misconduct by [jail] officials, to prove an intended condition or practice.'"  *Shepard v. Dallas*

*County*, 591 F.3d 445, 452 (5th Cir. 2009) (alteration in original) (quoting *Hare*, 74 F.3d at

---

[13] The policy provides that, when outside temperatures rise above 90 degrees, detainees should be (1) provided with additional water, ice, and cups; (2) allowed to wear shorts and t-shirts; (3) allowed access to fans; and (4) allowed additional showers.  *Enhanced Heat Protocols*, Texas Department of Criminal Justice, https://www.tdcj.texas.gov/offender_info/enhanced_heat_protocols.html (last visited Aug. 15, 2024) [https://perma.cc/G99M-MRDZ].

645).  That pattern "requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'"  *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009).

Here, the alleged de facto policy or condition is a failure to provide remedial measures to mitigate extreme heat.  *See* Dkt. No. 80 ¶ 27.  But the plaintiff has failed to adequately plead the requisite pervasive pattern.  At most, she alleges only two incidents where this alleged policy was not met: where Mr. Coones was allegedly denied a shower and water on the same day.[14]  *See* Dkt. No. 80 at ¶¶ 35–36.  While concerning, these allegations fail to demonstrate the pattern necessary to demonstrate that there was a de facto policy of not providing water, showers, fans, or other remedial measures.  *See Shepard*, 591 F.3d at 454; *see also Johnson v. Tangipahoa Parish Jail*, No. 21-1698, 2022 WL 1547764, at*6–7 (E.D. La. Apr. 25, 2022), *report and recommendation adopted by* 2022 WL 1540610 (E.D. La. May 16, 2022) (finding that two instances were insufficient to establish a pattern).  There are no allegations that this conduct was widespread and affected other inmate; rather, the assertion is that there were issues with extreme heat in TDCJ facilities.  *See generally* Dkt. No. 80.  Without factual allegations necessary to establish a pattern, the Court must conclude that the plaintiff fails to sufficiently plead a claim that the "de facto" policy—contrary to the written policy—was not to provide these remedial measures.

---

[14] This might properly be considered a single instance of failing to provide a remedial measure, but given that the Court should make factual inferences in favor of the plaintiff, the Court counts them as separate incidents.

**b.    The plaintiff does not allege sufficient facts for a plausible Section 1983 claim against Hefner.**

The Court also dismisses the plaintiff's Section 1983 claim against Hefner.  The plaintiff alleges that, as the warden of the Wallace Unit, Hefner "had control over the deployment of any available remedial measures for the extreme heat that he knew pervaded the prison, but either refused to deploy those measures or did not have any policy providing for the provision of such measures."[15]  Dkt. No. 80 ¶ 49.  In moving to dismiss this claim, Hefner argues that the plaintiff has not alleged that "Hefner had authority to change the policies that allegedly caused her son's death, nor that he violated her son's rights because [Hefner] failed to exercise that authority."[16]  Dkt. No. 83 at 10.

The plaintiff's claim against Hefner is two-fold: (1) that he did not provide a policy for the provision of these measures; and (2) that he refused to deploy those measures.  Dkt. No. 80 ¶ 49.  As has already been established, a policy to provide for the requested remedial measures exists, so that aspect of the claim must be dismissed.  *See supra* Section 3.A.i.a. Further, to the extent that the second prong could be construed as a conditions-of-confinement claim, the Court dismisses it for the same reasons that it dismissed the same

---

[15] The plaintiff also makes several allegations against Hefner regarding the release of Mr. Coones's medical records.  *See, e.g.*, Dkt. No. 80 ¶¶ 7–8, 41, 49.  These allegations could not possibly be construed as a constitutional violation, nor has the plaintiff pointed to any authority that would properly label them as such, so the Court disregards them in relation to this claim.

[16] The Court previously dismissed this claim against Hefner because the FAC did not allege that Hefner "had the power to change the policies that allegedly caused [Mr. Coones's death]" or that he failed to exercise that authority.  Dkt. No. 79 at 21 (cleaned up).

claim against Collier—the plaintiff did not plead a pattern of behavior indicating the existence of a de facto policy not to provide measures to remediate extreme heat.  *See id.*

### ii.    Medical-Care Claims

The plaintiff brings Section 1983 claims against several nurses and one doctor, alleging that they violated Mr. Coones's Eighth Amendment right against cruel and unusual punishment.  Dkt. No. 80 at ¶¶ 51–52.  The Eighth Amendment "does not, by its precise words, mandate a certain level of care for prisoners."  *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).  But as the Supreme Court has explained, the Eighth Amendment requires that prison officials "ensure that inmates receive adequate . . . medical care."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his [or her] conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'"  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

To demonstrate deliberate indifference, a plaintiff must allege facts showing that (1) the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]"; (2) the official actually drew the inference that a substantial risk of serious harm existed; and (3) the official disregard[ed] the risk.  *Farmer*, 511 U.S. at 837; *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019).  Therefore, the official must have been "subjectively aware of the risk of serious harm to the inmate."  *Easter*, 467 F.3d at 463 (quoting *Farmer*, 511 U.S. at 829) (cleaned up).

Nevertheless, under exceptional circumstances, "a prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious."  *Id.*  "This exception has

been applied in cases where the severity of the risk or injury is obvious or the cause of that injury or harm is plainly evident to the officer." *Brooks v. Taylor County*, No. 1:20-CV-049-H, 2021 WL 3039016, at *5 (N.D. Tex. July 19, 2021).

Still, courts have been cautioned that they "should be careful to ensure that the requirement of subjective culpability is not lost." *Anderson v. Dallas County*, 286 F. App'x 850, 860 (5th Cir. 2008) (quoting *Farmer*, 511 U.S. at 843 n.6). Thus, allegations "that a reasonable person would have known[] or that the defendant should have known" are insufficient. *Id.* (quoting *Farmer*, 511 U.S. at 843 n.6). Supreme Court precedent explains that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). A "plaintiff must show that officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs.'" *Id.* (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Neither malpractice nor negligent care rise to the level of a constitutional violation. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). Even gross negligence is not sufficient. *Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021). Likewise, "the decision whether to provide additional treatment" is a medical judgment call and cannot form the basis for a deliberate-indifference claim. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino*, 239 F.3d at 756). "Further, delay in medical care can only constitute an

Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

> **a.**    **The plaintiff's factual allegations do not plausibly show that Cogburn was deliberately indifferent.**

The Court previously dismissed the plaintiff's claim against Cogburn because the plaintiff did not sufficiently "allege any facts showing that Cogburn actually drew [an] inference that a substantial risk of serious harm existed." Dkt. No. 79 at 25. Because the plaintiff alleges no new facts against Cogburn, the Court dismisses the plaintiff's claim once again. In re-pleading her claim against Cogburn, the plaintiff reasserts her previous allegations against Cogburn and adds that Cogburn "was aware of the risks of heat exposure[,] severe dehydration . . . [and of Mr. Coones's] allergies- and asthma-related breathing issues." Dkt. No. 80 ¶ 36. Cogburn has moved to dismiss the plaintiff's Section 1983 claim against her, arguing that even if the allegations are taken as true, they do not support a plausible violation of Mr. Coones's Eighth Amendment rights. Dkt. No. 87 at 8–9. Because the additional allegations are conclusory, the Court agrees that the plaintiff has not overcome the high standard for deliberate indifference. *Domino*, 239 F.3d at 756.

The SAC alleges that on August 28, 2022, Mr. Coones walked into the Wallace Unit's medical unit and complained to Cogburn—"the Facility Health Service Administrator at the Wallace Unit in charge of inmate health services"—about the heat conditions. Dkt. No. 80 ¶¶ 35–36. He told her that "it was too hot in his cell" and that he "need[ed] to cool off" and asked to be moved to different housing. *Id.* ¶ 35. Cogburn checked Mr. Coones's pulse and respirations. *Id.* His "pulse was 103 sitting," and his "respirations were 98 a minute." *Id.* The plaintiff alleges that "[t]hese values are highly

abnormal and indicate a serious and potentially life-threatening condition." *Id.*  His "usual pulse was around 80 and [his] respirations were 18."  *Id.*

Cogburn "allowed [Mr. Coones] to rest on a gurney."  *Id.* ¶ 36.  She checked his skin and reported that it "was warm and dry."  *Id.*  The plaintiff alleges that "[d]ry skin is a sign of significant dehydration, and Cogburn . . . knew this from her nursing training."  *Id.* Cogburn told Mr. Coones to leave, but he would not because he feared going back to his cell.  *Id.*  Eventually, Cogburn called a security supervisor to take Mr. Coones back to his cell.  *Id.*  The plaintiff alleges that Cogburn was aware at that time of the many TDCJ inmate deaths and illnesses resulting from heat conditions.  *Id.* ¶ 29.  The plaintiff also claims that Cogburn was "aware of [Mr. Coones's] allergies- and asthma-related breathing issues" and was "aware of the risks of heat exposure and severe dehydration."  *Id.* ¶ 36. Even though she was aware of those risks, "she did not provide [Mr. Coones] with water and forced him back to his cell."  *Id.*  She also claims that, two days later, "Cogburn was aware of [Mr. Coones's] condition and that [he] needed immediate treatment for overheating and dehydration."[17] *Id.* ¶ 33.

Under these circumstances, the plaintiff has alleged sufficient facts to show that Cogburn was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]."  *Cleveland*, 938 F.3d at 676.  Mr. Coones's allegations indicate that Cogburn was aware of the history of death and illnesses stemming from heat conditions.  Dkt. No. 80 ¶ 29.  She was also aware of Mr. Coones's complaints about the heat on August 28 and generally of his health issues.  *Id.* ¶¶ 35–36.  In addition, the tests that

---

[17] In her SAC, the plaintiff adds facts about the state in which Mr. Coones was discovered on August 30.  *Compare* Dkt. No. 21 ¶ 33 *with* Dkt. No. 80 ¶ 39.  These additional allegations, as written, are only made against Baker, so the Court need not discuss them here.  *See* Dkt. No. 80 ¶ 39.

Cogburn ran revealed that Mr. Coones's heart and respiration rates were abnormally high. *Id.* And Cogburn discovered that Mr. Coones's skin was warm and dry, which, the plaintiff alleges, is a sign of dehydration. *Id.* ¶ 36.

That said, the plaintiff does not allege any facts showing that Cogburn actually drew the inference that a substantial risk of serious harm existed. *See* Dkt. No. 80. She broadly alleges that Cogburn "knew [] from her nursing training" that warm, dry skin is a sign of "significant dehydration." *Id.* ¶ 36. She also alleges that Cogburn "was aware of the risks of heat exposure and dehydration" and of Mr. Coones's "allergies- and asthma-related breathing issues." *Id.* But the plaintiff does not allege specific facts showing that Cogburn actually drew the inference that Mr. Coones faced a substantial risk of serious harm. *Id.* ¶¶ 35–36. Even if a person's "physical state could have allowed the [government official] to infer that [he] was at substantial risk of serious harm," the plaintiff must "present facts which plausibly show that these officers *actually* drew that inference." *See Brannan v. City of Mesquite*, No. 3:19-CV-1263-X, 2020 WL 7344125, at *8 (N.D. Tex. Dec. 14, 2020) (emphasis in original). The only addition to the SAC is a pleading of the "magic words"— that Cogburn was subjectively aware of the risks facing Mr. Coones. *See* Dkt. No. 80 ¶ 36. At most, the plaintiff has pled that Cogburn should have been aware of a substantial risk, which is insufficient under current precedent. Absent an additional pleading of facts, simply saying that Cogburn was subjectively aware does not sufficiently allege that Cogburn was subjectively aware. *See Brannan*, 2020 WL 7344125, at *8.

The plaintiff also alleges that two days later, on August 30, "Cogburn was aware of [Mr. Coones's] condition and that [he] needed immediate treatment for overheating and dehydration," but she does not allege that Cogburn saw Mr. Coones, treated him, or was

24

notified of his condition in some other way.  *See* Dkt. No. 80 ¶ 39.  Lacking factual support, this allegation is conclusory and will not be taken as true.  See *Gentilello*, 627 F.3d at 544.

Nevertheless, "a prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious."  *Easter*, 467 F.3d at 463.  Here, by running tests, Cogburn became aware of Mr. Coones's abnormally high heart and respiration rates, which indicate that the severity of the risk was obvious.  *See Brooks*, 2021 WL 3039016, at *5.  And unlike other injuries or risks, abnormally high heart and respiration rates are less likely to "be a sign of a non-serious injury," which makes it more plausible that the risk was obvious.  *See id.* (noting that dried blood coming from one's ear could be a sign of a non-serious injury, which makes it less plausible that the seriousness of the injury was obvious).

Even still, the plaintiff must allege facts indicating that Cogburn disregarded the risk. To the contrary, Cogburn initially addressed Mr. Coones's complaints and provided medical attention.  *See* Dkt. No. 80 ¶¶ 35–36.  She took his pulse and checked his respiration rate.  *Id.*  Afterwards, she let him to rest on a gurney.  *Id.* ¶ 36.  Cogburn also examined his skin.  *Id.*  Cogburn did not refuse to treat Mr. Coones, ignore his complaints, or engage in any similar conduct clearly evidencing a wanton disregard, and there are no factual allegations indicating that she intentionally treated him incorrectly.  *See Domino*, 239 F.3d at 756.  Further, the decision to allow Mr. Coones to remain outside of his cell for a longer period of time or whether to provide additional treatment is typically a matter of medical judgment.  *Domino*, 239 F.3d at 756.  The medical decision to offer Mr. Coones a brief

reprieve from the heat rather than an extended one is, therefore, insufficient to show a wanton disregard for his well-being.  *See id.*

The only cognizable difference between the claims asserted against Cogburn in the FAC and the SAC is the assertion that Cogburn was aware of both the risks from the heat and of Mr. Coones's health problems.  *See* Dkt. No. 80 ¶ 36.  But simply stating that Cogburn knew of those risks, even taken in the light most favorable to the plaintiff, does not establish that Cogburn actually drew those inferences.  *See Goff v. McLennan County*, No. 6:21-CV-494-ADA-JCM, 2022 WL 21757078, at *4 (W.D. Tex. Aug. 10, 2022), *report and recommendation adopted by* 2022 WL 21757079 (Oct. 5, 2022) (concluding that allegations of subjective knowledge are insufficient to establish that a defendant actually drew the requisite inference)*.  Thus, Cogburn's motion to dismiss this claim is granted.

> **b.  The plaintiff's factual allegations do not indicate that Ms. Baker was deliberately indifferent.**

The Court previously dismissed the plaintiff's Section 1983 claim against Baker because the plaintiff did not plausibly allege that Baker was subjectively aware of the potential harm facing Mr. Coones.  Dkt. No. 79 at 27–28.  Because the plaintiff alleges no new facts against Baker, the Court dismisses her claim once again.  The plaintiff does not allege facts indicating that Ms. Baker actually drew the inference that a substantial risk of serious harm existed.  Thus, she fails to plausibly allege deliberate indifference.

The plaintiff alleges that around 6:29 a.m. on August 30, Ms. Baker wrote in Mr. Coones's medical records that he was "rolling around on the floor naked."  Dkt. No. 80 ¶ 38.  There were four full trays of food in the cell that had not been touched.  *Id.*  Mr. Coones did not "verbalize to nursing or security," but he did "respond to verbal stimuli."  *Id.*  He "[wa]s not verbalizing pain[,] and no respiratory distress [was] noted."  *Id.*  Ms.

Baker "encouraged [Mr. Coones] to get up and get on with his day without response to suggestions." *Id.* She advised security "to let medical know if [Mr. Coones's] condition worsen[ed] or change[d] in any way." *Id.*

The plaintiff's allegations show that Ms. Baker was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]." *Cleveland*, 938 F.3d at 676. Specifically, Ms. Baker observed Mr. Coones rolling on the floor naked with four trays of untouched food. Dkt. No. 80 ¶ 39. He also did not verbalize to nursing or security or respond to her suggestion for him to get up. *Id.*

But the plaintiff did not allege any facts that could lead to a plausible inference about Ms. Baker's state of mind and whether she actually drew the inference. *See* Dkt. No. 21; *see Cleveland*, 938 F.3d at 676; *Brooks*, 2021 WL 3039016, at *6. While Ms. Baker did advise security "to let medical know" if Mr. Coones's condition worsened or changed, Ms. Baker's actions do not indicate that she believed a substantial risk of serious harm existed at the time. *See* Dkt. No. 80 ¶ 39.

As noted above, a plaintiff can plead sufficient factual allegations to show that the substantial risk of serious harm was so obvious that the defendant's subjective awareness can be inferred. *Easter*, 467 F.3d at 463. But after finding that there was not an obvious risk already, *see* Dkt. No. 79 at 27–28, the plaintiff fails to plead additional facts indicating that the risk was obvious, *see* Dkt. No. 80 ¶ 39. Rather, she simply alleges in conclusory fashion that the risk was "obvious." *Id.* But Mr. Coones's conduct does not necessarily and obviously evidence harm, much less a substantial risk of serious harm. Rolling around on the floor naked, not eating, and not speaking to nurses or guards could be signs of non-serious risks or injuries or even no injuries or risks whatsoever. *See Brooks*, 2022 WL

3039016, at *6.  In addition, the fact that Ms. Baker noted no respiratory distress makes it less plausible that it was obvious that Mr. Coones was at substantial risk of serious harm. *See* Dkt. No. 80 ¶ 39.  Because there are no plausible allegations that she was subjectively aware and disregarded the risk—and the factual allegations do not indicate that the risk of serious injury was obvious—the Court grants Ms. Baker's motion to dismiss as to this claim.

> ### c.   The plaintiff does not allege specific facts indicating that Aguilar, Boedeker, Herrera, Morris, Dr. Baker, or Heady were deliberately indifferent.

The Court previously dismissed the claims against Aguilar, Boedeker, Herrera, Morris, Dr. Baker, and Heady because the plaintiff did not allege facts, even if taken as true, that would indicate deliberate indifference.  Dkt. No. 79 at 28–29.  In response, the plaintiff adds a single sentence to buttress her claims against these defendants in her SAC: that "Jace sought medical care from each of these individual doctors and nurses, presented increasingly worse and more worrying symptoms of the heat-induced medical problems that ultimately resulted in his death, but was consistently sent back into a cell that these Defendants knew was overheated."  Dkt. No. 80 ¶ 41.  Once again, defendants Aguilar, Boedeker, Herrera, Morris, Dr. Baker, and Heady ask that the Court dismiss the plaintiff's Section 1983 claims against them.  Dkt. Nos. 86 at 15–20; 87 at 9–10.  Each of those defendants argues that the plaintiff fails to adequately plead their individual personal involvement and that her claims against them are otherwise threadbare or conclusory.  Dkt. Nos. 86 at 16–20; 87 at 9–10.  The Court agrees that even if all of the plaintiff's allegations regarding these defendants are taken as true, they fail to support a plausible constitutional violation.

A plaintiff bringing a Section 1983 claim "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to

the constitutional violation alleged." *DeMarco v. Davis*, 914 F.3d 383, 390 (5th Cir. 2019)

(quoting *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995)). And "[a] [S]ection 1983

complaint must plead specific facts and allege a cognizable constitutional violation in order

to avoid dismissal for failure to state a claim." *Mills*, 837 F.2d at 678.

The plaintiff's only assertion against these defendants reads as follows:

> Christine M. Heady RN, Jennifer A. Aguilar L.V.N., Olivia Herrera, R.N.,
> Susan Boedeker L.V.N., Brad R. Baker M.D., and Chad R. Morris all were
> aware of the extreme heat conditions at Wallace and that [Mr.] Coones was
> suffering from the heat as he had informed them and he had presented several
> times complaining of the heat and showing symptom[s] of overheating to [the]
> point of being dangerous to his life. Jace sought medical care from each of
> these individual doctors and nurses, presented increasingly worse and more
> worrying symptoms of the heat-induced medical problems that ultimately
> resulted in his death, but was consistently sent back into a cell that these
> Defendants knew was overheated.[18]

Dkt. No. 21 ¶ 35. The remaining factual allegations regarding Mr. Coones's medical care

do not include or reference these defendants. *See id.*

Even if the Court were to take these general allegations as true, they are insufficient

to indicate deliberate indifference. The plaintiff does not allege specific facts showing that

they were aware of his symptoms or what his symptoms were. *See* Dkt. No. 80 ¶ 41. She

also does not allege facts regarding the extent to which each of these defendants interacted

with Mr. Coones, much less whether they did or did not provide any medical attention. *See*

*id.* Mere knowledge of the heat, and that Mr. Coones was suffering from it, is not enough to

show these defendants were deliberately indifferent. Her allegations are, once again,

conclusory and collective. Therefore, the plaintiff has not plausibly alleged sufficient facts

---

[18] The plaintiff also states that "[t]he specific interactions between Jace and these Defendants are
unknowable at this time due to Jace's death and Hefner's refusal to provide medical records." Dkt.
No. 80 ¶ 41. But binding precedent bars discovery under these circumstances until the Court
resolves the defendant's assertions of qualified immunity. *See Carswell*, 54 F.4th at 311.

to indicate that these defendants disregarded a substantial risk of serious harm, so these claims must be dismissed.

### iii.   *Monell* Liability Claims

The plaintiff also brings Section 1983 claims against MCHD, TTUHSC, Mitchell County, and Texas.[19]  *Id.* ¶ 51.  In her response to the parties' motions, the plaintiff asserts that she has alleged sufficient facts to make plausible *Monell* claims against these defendants. Dkt. No. 91 at 16–17.  The Court disagrees and grants these parties' motions as to the plaintiff's Section 1983 claims against them.

The scope of "person" under Section 1983 includes "municipalities and other local governmental units."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).  Therefore, a municipality can be sued directly and held liable for a Section 1983 violation.  *Id.*  One way to establish municipal liability is to show that the defendant "implement[ed] or execut[ed] a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" that violated the plaintiff's constitutional rights.  *Id.* at 690.  The plaintiff can also demonstrate that the local government's "custom" deprived the plaintiff of his constitutional rights, "even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Id.* at 690–91.  However, a

---

[19] The SAC includes an allegation that "[t]he medical care providers . . . whether contracted by MCHD, Mitchell County, TDCJ, or Texas Tech, lacked sufficient training . . . [and] instructions . . . and had their actions reviewed and ratified by policymakers."  Dkt. No. 80 ¶ 59.  This allegation is included in the "State Law Claims" section of the SAC, but it is more appropriately addressed in this section.  As explained below, the claims fail.

single "act is [usually] not itself a custom." *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002).

In order to attach municipal liability based on a policy or custom, "[a] plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (quoting *Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017)). "The first policy prong 'includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). The second prong refers to "the governing body of the municipality or [] an official to whom that body has delegated policy-making authority." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quotation omitted). As to the third prong, a plaintiff must "show[] either that the policy itself was unconstitutional or that it was adopted with deliberate indifference to the known or obvious fact" that it would lead to a constitutional violation. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 219 (5th Cir. 2019) (internal quotations omitted). To show deliberate indifference, the plaintiff must demonstrate (1) a "direct causal link" between the policy and their harm, and (2) that the defendant had the "requisite degree of culpability." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). The plaintiff must show that the defendant completely disregarded "the risk that a violation of a constitutional . . . right [would] follow the decision." *Id.* at 411. Showing "simple or

even heightened negligence will not suffice." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Piotrowski*, 237 F.3d at 579).

To establish *Monell* liability, the plaintiff must first plead a persistent, widespread custom or practice. *See Pena*, 879 F.3d at 621–22. In other words, "[a] pattern is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). A plaintiff must therefore show "a pattern of abuses that transcends the error made in a single case." *Id.* at 850–51 (quoting *Piotrowski*, 237 F.3d at 578). And that pattern must demonstrate "similarity and specificity." *Id.* at 851. In addition, the pattern "requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

Another way to establish municipal liability is by showing a failure to train. *Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021). "To survive dismissal on this claim, [the plaintiff] must plead 'that (1) [a] supervisor either failed to supervise or train [a] subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's right[;] and (3) the failure to train or supervise amounts to deliberate indifference.'" *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017)). To show deliberate indifference, a plaintiff may demonstrate that "(a) the municipality had notice of a pattern of

32

similar violations, or (b) the constitutional violation was the highly predictable consequence of a particular failure to train." *Id.* (internal quotations and citation omitted).

A municipality "cannot be held liable solely because it employs a tortfeasor" or, put another way, solely on a respondeat-superior theory. *Monell*, 436 U.S. at 691 (emphasis omitted). Furthermore, to survive a motion to dismiss, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

### a. The plaintiff does not allege facts showing a plausible *Monell* claim against MCHD.

In its motion to dismiss, MCHD argues that the plaintiff's "pleadings are insufficient to establish municipal liability under [Section] 1983." Dkt. No. 88 at 3. MCHD explains that even if the plaintiff "has asserted a constitutional violation on the part of MCHD personnel, her pleadings are not sufficient to state a case of municipal liability," particularly because the actions that the plaintiff challenges "do not rise to the level of deliberate indifference." *Id.* at 4. Under *Monell*, the plaintiff's allegations regarding MCHD fall short.

MCHD cannot be held liable solely on a respondeat-superior theory. *Monell*, 436 U.S. at 691. Instead, the plaintiff must point to an actual written policy, a widespread custom or practice, a single decision by a policymaker, or a failure to train or supervise by MCHD. *Pena*, 879 F.3d at 621–22; *Hutcheson*, 994 F.3d at 482. A plaintiff must do more than "describe the incident that gave rise to his injury." *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020).

But the plaintiff fails to do so. In fact, the allegations in her SAC are the same as they were in the FAC—allegations that the Court deemed insufficient. *Compare* Dkt. No. 21

*with* Dkt. No. 80.  The Court sees no reason to deviate from that prior conclusion.  The SAC only makes a couple of allegations about MCHD.  She explains that "the nurses work by a contract between TDCJ, [MCHD], and [TTUHSC]."  Dkt. No. 80 ¶ 23 n.1.  And she later states that Mr. Coones was taken to Mitchell County Hospital on August 13, 2020, suffering from dehydration as a result of excessive heat, and was returned to the Wallace Unit on August 15, 2020, in stable condition.[20]  *Id.* ¶ 33.  The plaintiff does not allege any facts—let alone sufficiently plausible allegations—supporting a *Monell* claim against MCHD under any permissible theory of liability.  So like the Court did before, it must once again dismiss her claim against MCHD.

### b.   Texas and TTUHSC cannot be held liable under *Monell* because they are not "persons" under Section 1983.

The Court previously dismissed the plaintiff's claims against Texas and TTUHSC because they are "arms of the state" and not "persons" for purposes of Section 1983.  *See* Dkt. No. 79 at 33–34.  The plaintiff, however, merely reasserted her old arguments in her SAC.  The plaintiff again argues that Texas and TTUHSC can be held liable under *Monell*.  Dkt. No. 91 at 16–17.  TTUHSC and Texas assert that the plaintiff's Section 1983 claim against them must be dismissed because States and "arms of the State" cannot be held liable under *Monell*.  Dkt. No. 94 at 7–8.  The Court agrees with Texas and TTUHSC.

As the Supreme Court explained in *Monell*, a plaintiff can hold local governments and municipalities liable for violating a person's constitutional rights under Section 1983.  *Monell*, 436 U.S. at 690–91.  Nevertheless, in *Will v. Mich. Dep't of State Police*, the Supreme

---

[20] She also states that Mr. Coones was taken to the Mitchell County Hospital on August 8, 2020, but as noted above, it is unclear whether this was a typographical error.  *See* Dkt. No. 21 ¶ 24.

Court held that although municipalities and local governments are "persons," States are not. 491 U.S. 58, 71 (1989). The Supreme Court noted that "States are protected by the Eleventh Amendment while municipalities are not." *Id.* at 70. Thus, it "limited [its] holding in *Monell* 'to local government units which are not considered part of the State for Eleventh Amendment purposes.'" *Id.* (quoting *Monell*, 436 U.S. at 690 n.54). And because state universities are "arms of the state," the Fifth Circuit has recognized that they are also not "persons" under Section 1983. *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007). Accordingly, neither Texas nor TTUHSC may be held liable under the plaintiff's *Monell* theory of liability. Therefore, the Court dismisses the plaintiff's claims against Texas and TTUHSC.

> **c.    The plaintiff does not allege any facts against Mitchell County.**

The Court previously dismissed the plaintiff's claim against Mitchell County, and it does so once again. Mitchell County moves to dismiss the Section 1983 claim against it, arguing that the plaintiff fails to allege any facts against it that would support *Monell* liability. Dkt. No. 81 at 3. Indeed, the plaintiff's allegations regarding Mitchell County fall short. In fact, the only references to Mitchell County in the SAC are in the paragraph detailing where Mitchell County can be served with process (Dkt. No. 80 ¶ 21), the paragraph explaining where the Wallace Unit is located (*Id.* ¶¶ 1, 26), and the paragraphs where she explains that she asserts claims against it (*Id.* ¶¶ 56; 59, 61). Absent any specific

facts regarding Mitchell County, her Section 1983 claim against Mitchell County must be dismissed. *Mills*, 837 F.2d at 678.

### B.    State-Law Claims

The plaintiff asserts that all of the defendants "are liable under the [TWDS] and the [TTCA]. Dkt. No. 80 ¶ 56.[21]  She also brings medical-malpractice claims against Ms. Baker, Cogburn, Aguilar, Boedeker, Herrera, Morris, Dr. Baker, and Heady. *See id.* ¶ 57–58.[22]  For the reasons explained below, her state-law claims must be dismissed.

"The TTCA provides a limited waiver for certain suits against Texas governmental entities." *Bustos*, 599 F.3d at 462.  Its "waiver of immunity constitutes the only avenue for common-law recovery against the government on a tort theory." *Dorward v. Ramirez*, No. 3:09-CV-0018-D, 2009 WL 2777880, at *13 (N.D. Tex. Aug. 28, 2009) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008)) (cleaned up).

Citing Texas caselaw, Texas federal courts have recognized that the TWDS does not waive sovereign immunity. *Boyd v. City of River Oaks*, Nos. 4:12-CV-443-A & 4:13-CV-511-A, 2014 WL 201704, at *6 (N.D. Tex. Jan. 16, 2014); *Freeman v. City of Kilgore*, No. 6:13-CV-614-JDL, 2014 WL 11498107, at *3 (E.D. Tex. Nov. 21, 2014) (citing *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)).  These courts have noted that any waiver

---

[21] It is unclear whether the plaintiff is relying on the TWDS merely to assert that she is entitled to Texas's wrongful-death remedies for her Section 1983 claims or whether she is bringing a separate state-law wrongful-death claim. *See* Dkt. No. 80 ¶ 56.  In an abundance of caution, and because the defendants appear to be opposing a state-law wrongful-death claim, the Court treats the plaintiff's allegations as asserting such a claim.

[22] The SAC does not actually plead medical-malpractice claims against defendants other than Baker and Cogburn, but it appears that the sentence that would have done so was cut off. *See* Dkt. No. 80 ¶ 57.  In an abundance of caution, the Court has included a section analyzing claims against those defendants.

must be "clear and unambiguous." *Boyd*, 2014 WL 201704, at *6; *Freeman*, 2014 WL 11498107, at *3. The Fifth Circuit has also noted that the TWDS does not waive governmental immunity for units of Texas government. *Saenz v. City of McAllen*, 396 F. App'x 173, 179 (5th Cir. 2010).

As explained in greater detail below, because Texas and TTUHSC have sovereign immunity, which was not waived by the TTCA or the TWDS in federal courts, those claims must be dismissed. The plaintiff has also alleged no facts showing a waiver of MCHD's governmental immunity. She does not allege any facts that could plausibly support state-law claims against Mitchell County. Lastly, the claims against Ms. Baker, Cogburn, Aguilar, Boedeker, Herrera, Morris, Dr. Baker, Heady, Collier, and Hefner must be dismissed under Section 101.106 of the Texas Civil Practice and Remedies Code because they were acting within the scope of their employment, and the claims could have been brought under the TTCA against their employer.

### i. The plaintiff's state-law claims against Texas are barred by sovereign immunity.

Texas asserts that the plaintiff's state-law claims against it are barred by sovereign immunity. Dkt. No. 84 at 8–10. The plaintiff does not respond to Texas's argument. *See* Dkt. No. 91. The Court agrees with Texas.

The Eleventh Amendment recognizes that States have sovereign immunity. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Thus, suits against States in federal court are barred and must be dismissed for lack of jurisdiction unless the State consents. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).

The TTCA provides that "[a] suit under this chapter shall be brought in state court in the county in which the cause of action or a part of the cause of action arises.'" Tex. Civ.

Prac. & Rem. § 101.102(a). The Fifth Circuit has interpreted this provision to mean that "[a] state does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in its own courts." *Sherwinski v. Peterson*, 98 F.3d 849, 851–52 (5th Cir. 1996). Therefore, the TTCA "waives sovereign immunity in state court only"; it "does not waive Eleventh Amendment immunity in suit in federal courts." *Id.* at 852; *see also Pena v. Dall. Cnty. Hosp. Dist.*, No. 3:12-CV-0439-N, 2012 WL 12925077, at *2 n.7 (N.D. Tex. Sept. 4, 2012) ("It is well settled in this circuit that [the] TTCA does not waive [a governmental unit's] immunity from suit in federal court; it waives immunity from suit—in limited circumstances—only in Texas state courts.").

The plaintiff does not even attempt to demonstrate that a waiver of immunity applies. She does not plead that Texas waived its sovereign immunity. *See* Dkt. No. 80. And in her response, she does not address Texas's arguments regarding its sovereign immunity. Dkt. No. 73 at 13. Therefore, her state-law claims against Texas are barred and dismissed.

### ii.    The plaintiff's state-law claims against TTUHSC are barred because, as an agency of Texas, it has sovereign immunity.

TTUHSC argues that it also has sovereign immunity because it is an agency of Texas Dkt. No. 85 at 3–5, and the plaintiff does not disagree, *see* Dkt. No. 91. Fifth Circuit precedent provides that "[t]he Eleventh Amendment cloaks . . . [TTUHSC] with sovereign immunity as [a] state institution[]." *United States ex rel. Foulds v. Texas Tech. Univ.*, 171 F.3d 279, 289 n.14 (5th Cir. 1999). Accordingly, because "the Fifth Circuit has determined that the TTCA waives sovereign immunity in state court only," courts have dismissed state tort claims against state institutions like TTUHSC. *See Buress v. Texas Tech Univ. Health Scis. Ctr.*, 2019 WL 13156315, No. MO-18-CV-00077-DC, at *2–4 (W.D. Tex. Feb. 15, 2019)

(dismissing claims against TTUHSC); *Hale v. United States*, 4:16-CV-01189, 2016 WL 10707031, at *2–3 (S.D. Tex. Oct. 28, 2016) (dismissing claims against the University of Texas Health Sciences Center at Houston); *Schultz v. Ercole*, No. SA-21-01043-XR, 2022 WL 847234, at *4 (W.D. Tex. Mar. 22, 2022) (dismissing claims against the University of Texas Health Sciences Center).  The plaintiff does not argue that TTUHSC has waived sovereign immunity.  *See* Dkt. No. 91.  Thus, her state-law claims against TTUHSC are also barred and dismissed.

### iii. The plaintiff pleads no facts to demonstrate a valid waiver of MCHD's immunity.

MCHD moves to dismiss the plaintiff's state-law claims against it, claiming that the plaintiff has not pled facts demonstrating a waiver of immunity.  Dkt. No. 88 at 6–8. Because her claims do not arise under the limited areas where the TTCA waives immunity, MCHD's maintains immunity, and the claims must be dismissed.

As the Fifth Circuit has noted, hospital districts are "governmental unit[s] immune from suit under the TTCA."  *Aguocha-Ohakweh v. Harris Cnty. Hosp. Dist.*, 731 F. App'x 312, 316 (5th Cir. 2018) (citing *Martinez v. Val Verde Cnty. Hosp. Dist.*, 140 S.W.3d 370, 371 (Tex. 2004)).  "[U]nless the TTCA expressly waives immunity, courts lack subject matter jurisdiction over tort claims against governmental units."  *Id.* (citing *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 224–25 (Tex. 2004)).  The plaintiff "bears the burden of pleading facts that affirmatively demonstrate jurisdiction by alleging a valid waiver of immunity."  *See id.* (citing *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003)).

For immunity to be waived under the TTCA, "the claim must arise under one of the three specific areas of liability for which immunity is waived, and the claim must not fall

under one of the exceptions from waiver." *Horttor v. Livingston*, No. 1:16-CV-214-BL, 2019 WL 2287903, at *5 (N.D. Tex. May 29, 2019) (quoting *Morgan v. City of Alvin*, 175 S.W.3d 408, 417 (Tex. App—Houston [1st Dist.] 2004, no pet.)).  Those three areas are "(1) injury caused by an employee's use of a motor-driven vehicle within the scope of his employment; (2) injury caused by a condition or use of tangible personal or real property; and (3) premises defect." *Id.* (quoting *Morgan*, 175 S.W.3d at 417); Tex. Civ. Prac. & Rem. Code § 101.021-022.

The plaintiff does not plead any facts to demonstrate a valid waiver of immunity. Her allegations do not arise within one of the areas where immunity is waived.  *See* Dkt. No. 80.  Therefore, these claims must be dismissed.

### iv.   The plaintiff pleads no facts demonstrating a valid waiver of Mitchell County's immunity or supporting any state-law claim.

Mitchell County asserts that the plaintiff has not alleged any facts against it, much less facts supporting plausible state-law violations.  Dkt. No. 81.  Texas law recognizes its counties as government units, and they are shielded by immunity.  *Duffie v. Wichita County*, 990 F. Supp. 2d 695, 717 (N.D. Tex. 2013).  As previously noted, "[t]he TTCA creates a limited waiver of sovereign immunity, though only under the clearly defined areas enumerated in the Act." *Id.* (citing Tex. Civ. Prac. & Rem. Code § 101.021).  The plaintiff has not alleged any facts indicating a waiver of immunity.  *See* Dkt. No. 80.  In fact, she does not allege any specific facts related to Mitchell County outside of acknowledging that

the Wallace Unit is located in it.  *See id.*  Thus, the plaintiff fails to show that Mitchell

County's immunity has been waived.

> **v.** **The plaintiff's state-law claims against employees of Texas agencies and municipalities must be dismissed under the Texas Civil Practice and Remedies Code.**

Ms. Baker, Cogburn, Aguilar, Boedeker, Herrera, Morris, Dr. Baker, Heady, Collier,

and Hefner all assert, that under Section 101.106(f) of the Texas Civil Practice and

Remedies Code, the plaintiff's state-law claims against them should be dismissed.  Dkt.

Nos. 82 at 12–15; 83 at 11–14; 87 at 10–11; 93 at 9–10; 94 at 4.  The Court agrees.

Section 101.106(f) "foreclose[s] suit against a government employee in his individual

capacity if he was acting within the scope of employment."  *Franka v. Velasquez*, 332 S.W.3d

367, 381 (Tex. 2011).  Thus, Section 101.106 "provides government employees immunity

from suit" under certain circumstances.  *Hoyt v. Big Spring State Hosp.*, No. 6:15-CV-0003-

BL, 2016 WL 7189844, at *15 (N.D. Tex. Dec. 8, 2016) (quoting *Tipps v. McCraw*, 945 F.

Supp. 2d 761, 766 (W.D. Tex. 2013)).  Specifically, section 101.106(f) provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Thus, "[u]nder the election-of-remedies provisions of the TTCA, a plaintiff who sues

under the TTCA must elect between suing a government unit and suing an employee of that

unit."  *Thomas v. State*, 294 F. Supp. 3d 576, 613 (N.D. Tex. 2018) (citing Tex. Civ. Prac. &

Rem. Code § 101.106).  These provisions "serve[] the purpose of protecting government

employees from individual liability for acts or omissions where a claim based upon the same

41

facts is made against their employers." *Id.* (quotation omitted). "The TTCA 'strongly favors dismissal of governmental employees.'" *Id.* (quoting *Tipps*, 945 F. Supp. at 766).

The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5). The Fifth Circuit has clarified that whether a claim is within the scope of the defendant's employment focuses on "whether the defendant's actions are linked to his job responsibilities," not whether the official's conduct is unlawful. *Smith v. Heap*, 31. F.4th 905, 914 (5th Cir. 2022). The Fifth Circuit has also explained that Section 101.106(f) asks not whether the plaintiff "can succeed on the merits, but whether [her] claim sounds in tort." *Wilkerson v. Univ. of N. Tex. By and Through Bd. of Regents*, 878 F.3d 147, 162 (5th Cir. 2017) (citing *Franka v. Velasquez*, 332 S.W.3d 367, 369–85 (Tex. 2011)). And in *Franka*, the Texas Supreme Court explained that a claim "could have been brought under this Act" if the "claim is in tort and not under another statute that independently waives immunity." 332 S.W.3d at 381. For purposes of this provision, "a claim could have been brought under the TTCA against a governmental entity whether or not the TTCA waives immunity from suit." *Hoyt*, 2016 WL 7189844, at *16.

Here, the plaintiff "has sued these [] defendants in their individual capacities for acts that occurred in the course and scope of their employment." *See Horttor*, 2019 WL 2287903, at *5. The plaintiff's claims against the MCHD and TTUHSC nurses and doctor center on the medical care that they provided to Mr. Coones, and their job responsibilities included providing medical care to the inmates. Dkt. No. 80 ¶¶ 55–59. Therefore, a connection between their job duties and the actions alleged exists. Likewise, the plaintiff's claims

42

against Hefner and Collier center around conduct linked to their job responsibilities (*see id.* ¶ 56); she does not allege facts regarding conduct that is not linked to their job responsibilities (*see generally id.*).  Notably, the plaintiff does not dispute that the defendants have been sued for acts that occurred within the scope of their employment.  *See* Dkt. No. 91.  In addition, under Section 101.106(f), her claims could have been brought against the defendants' employers under the TTCA, even though the employers retain their immunity, as discussed above.  *Hoyt*, 2016 WL 7189844, at *16; *Franka*, 332 S.W.3d at 385.

To the extent that the plaintiff also asserts state-law wrongful-death claims, these tort claims are also subject to the TTCA's election-of-remedies provisions and, therefore, barred by Section 101.106(f).  *See Hutcheson v. Dallas County*, No. 3:17-CV-2021-BN, 2020 WL 1692950, at *19 (N.D. Tex. 2020) (noting that to the extent the defendants asserted state-law wrongful-death claims against government employees under the TWDS, those claims must be dismissed under the TTCA); *see also Romero v. City of Grapevine*, No. 3:15-CV-03101-N, 2016 WL 11474100, at *5 (N.D. Tex. May 2, 2016); *Guerrero v. City of El Paso*, No. EP-11-CV-101-KC, 2011 WL 3880946, at *4 (W.D. Tex. Sept. 1, 2011).  Thus, the plaintiff's state-law claims against these defendants must be dismissed.

And "[w]hile the [TTCA] allows plaintiffs to amend their pleadings by dismissing the individual defendants and naming their governmental entity employer within 30 days after a motion to dismiss is filed, . . . such an amendment would be futile" where the plaintiff has already sued the government unit.  *Chaney v. E. Cent. Indep. Sch. Dist.,* No. SA-21-CV-01082-

FB, 2022 WL 1540592, at *5 (W.D. Tex. May 16, 2022).  Because the plaintiff has already

sued MCHD, TTUHSC, and the TDCJ, any amendment would be futile.[23]

### C.    ADA Claims

Texas, TTUHSC, MCHD, and Mitchell County all move to dismiss the plaintiff's

ADA claims against them.  Dkt. Nos. 81; 84; 85; 88.  Texas and TTUHSC assert that their

sovereign immunity bars her claims against them.  Dkt. Nos. 84 at 18–19; 85 at 18–19.

These defendants also assert that the plaintiff did not allege any facts that would support a

plausible ADA claim.  *See* Dkt. Nos. 81 at 2–4; 84 at 13–19; 85 at 13–19; 88 at 5–9; 92 at 2–

3; 93 at 4–5; 94 at 8–9.  The Court agrees.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason

of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such

entity."  42 U.S.C. § 12132.  To establish a prima facie ADA claim, the plaintiff must show:

(1) the individual "is a qualified individual"; (2) "he [was] excluded from participation in, or

[] denied benefits of, services, programs, or activities for which the public entity is

responsible, or [wa]s otherwise [] discriminated against by the public entity"; and (3) this

---

[23] The plaintiff broadly claims that the Court need not dismiss the state-law claims because "they are alternative arguments" and "overlap significantly with the substantive federal claims."  Dkt. No. 91 at 17.  But the plaintiff points to no caselaw to support her argument.  *See id.*  In any event, as to the state-law claims against Texas and TTUHSC, the Supreme Court has held that considerations of policy such as judicial economy, convenience, or fairness "cannot override the constitutional limitation on the authority of the federal judiciary to adjudicate suits against a State."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).  And the state-law claims against the remaining defendants are not being dismissed merely because they are state-law claims that have been brought in federal court; the Court must dismiss them because the plaintiff has not shown a waiver of governmental immunity or demonstrated that the claims against the employees are not barred under Section 101.106(f).

"exclusion, denial of benefits, or discrimination [wa]s by reason of his disability." *Melton v. Dall. Rapid Area Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

A "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1). Major life activities include tasks such as "caring for oneself, performing manual tasks, walking, seeing, hearing, . . . speaking, breathing, learning, . . . and working." 29 C.F.R. § 1630.2(i). They also include "[t]he operation of a major bodily function" or "the operation of an individual organ within a body system." *Id.* § 1630.2(ii). A plaintiff can assert an ADA claim under two theories. *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1032 (5th Cir. 2022). First, she can demonstrate that "the defendants failed reasonably to accommodate [the individual's] disability." *Id.* (citing *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005)). Second, she can show that the defendants "knowingly discriminated against [the individual] because of [his] disability." *Id.* (citing *Soledad v. U.S. Dep't of the Treasury*, 304 F.3d 500, 503–04 (5th Cir. 2002)).

To prove conscious discrimination, "a plaintiff must show that [the individual's] disability 'played a role' in the defendant's 'decision making process and [had] a determinative influence on the outcome.'" *Id.* at 1033 (quoting *Soledad*, 304 F.3d at 503–04). The plaintiff can show "that [the individual] was treated differently and less favorably than other, non-disabled inmates." *Baker v. TDCJ-CID*, No. 5:15-CV-202-BQ, 2017 WL 11467827, at *5 (N.D. Tex. Mar. 9, 2017), *adopted as modified on other grounds by* No. 5:15-CV-202-C, 2017 WL 11467813 (N.D. Tex. Apr. 25, 2017) (quotation omitted). The plaintiff must plead facts that make it plausible that the individual was discriminated against because of his disability, though "[d]isability-related animus need not be the sole reason for the

challenged decision." *Pickett*, 37 F.4th at 1033–34. (quotation omitted).  And to establish a failure-to-accommodate claim, "a plaintiff must prove (1) [the individual] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020) (quotation omitted).

The ADA provides that "[a] State shall not be immune under the [E]leventh [A]mendment . . . from an action in [f]ederal" court.  42 U.S.C. § 12202.  This provision is "an unequivocal expression of Congress's intent to abrogate state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 154 (2006).  The Supreme Court specified, however, that "insofar as Title II creates a private cause of action for damages against States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159 (emphasis in original).  Thus to determine whether a state's sovereign immunity is abrogated for an ADA claim, courts must consider "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.* (referred to as the *Georgia* factors).

### i.     The plaintiff does not allege sufficient facts to support an ADA claim against Texas, TTUHSC, Mitchell County, or MCHD.

The plaintiff does not allege sufficient facts to support an ADA claim.  The plaintiff's SAC fixes a few of the deficiencies noted in the prior dismissal order, *see* Dkt. No. 79 at 45–46, but she fails to reasonably plead either theory of ADA violation.  First, the plaintiff does not allege any facts showing a plausible ADA claim for conscious discrimination.  She fails

to point to any facts indicating that Mr. Coones was treated less favorably than other non-disabled inmates because of his disability.  *See* Dkt. No. 80.  And she also does not allege sufficient facts to support a failure-to-accommodate claim.  She does not allege that any of these defendants "breached [their] affirmative obligation to reasonably accommodate the [individual's] disability, thereby denying [him] meaningful access to the services and programs available to other, non-disabled inmates."  *Baker*, 2017 WL 11467827, at *5 (quotation omitted).  She does not point to any service, benefit, or program that was available to other, non-disabled inmates but not to Mr. Coones or allege that the defendants had failed to accommodate him.  *See* Dkt. No. 80.

### ii.   Title II does not abrogate Texas and TTUHSC's sovereign immunity.

Under the *Georgia* factors, the plaintiff's claims against Texas and TTUHSC are also barred by sovereign immunity.  The first factor asks whether the plaintiff has sufficiently alleged an ADA claim against Texas or TTUHSC.  *See Baker*, 2017 WL 11467827, at *8.  Here, because the plaintiff has not alleged sufficient facts to demonstrate either discrimination because of or failure to reasonably accommodate Mr. Coones's disability, she has not alleged a plausible claim.  And because the first *Georgia* factor has not been satisfied, the Court need not proceed to the other two prongs.  *See Hale*, 642 F.3d at 503.  Texas and TTUHSC maintain their sovereign immunity, and the plaintiff's ADA claims are barred.

### D.   The Claims Against the Remaining Defendants Are Dismissed.

Having dismissed the plaintiff's claims against the defendants who moved for dismissal, the Court now turns to the remaining defendants.  As a primary matter, the Court notes that there are several defendants from various points in this case who were never

served, among them (1) the Regional Director of TDCJ Region V (in August 2020); (2) an unnamed Security Supervisor; (3) the guard and medical staff John Does; and (4) the TDCJ. *See generally* Dkt. Nos. 1; 21; 80.  Previously, the Court ordered the plaintiff to prove service on those various defendants under penalty of dismissal.  *See* Dkt. No. 47.  The plaintiff was given 90 days to prove that service, yet several of the defendants were never served. Because the defendant never proved service on (1) the Regional Director of TDCJ Region V, (2) the unnamed Security Supervisor; (3) the guard and medical staff John Does; and (4) the TDCJ, and in light of its Order (Dkt. No. 47), the Court also dismisses the plaintiff's claims against the remaining defendants.

### E.   The Court denies the Plaintiff leave to amend her complaint.

The plaintiff requests leave to amend her complaint should the Court dismiss her claims.  *See* Dkt. No. 91 at 18.  This is the second time that the Court has dismissed all of the plaintiff's claims.  The Fifth Circuit has expressed a strong policy in favor of granting leave to amend at least once.  *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  The Court, having granted leave to amend once already, now finds itself in the same position.  Functionally though, the Court is reviewing the third version of the complaint, because the plaintiff amended the original complaint before the Court could rule on its sufficiency.  *See* Dkt. No. 21.  In other words, the plaintiff has had three chances to plead her best case, and the Court concludes that her complaint must now be dismissed with prejudice.  Further, the plaintiff has been represented by counsel throughout this proceeding  And the SAC failed to include much additional factual material—rather, it appeared to, at times, merely track language used by the Court in the

First Dismissal Order.  Therefore, the Court denies the plaintiff leave to amend her complaint again because any further amendments would be futile.

**4.   Conclusion**

Although the plaintiff's allegations are serious and the Court treats them accordingly, the Court concludes that the SAC does not allege sufficient facts to adequately state Section 1983 claims against the defendants.  *See supra* Section 3.A.  The individual defendants are entitled to qualified immunity, and the government defendants are entitled to sovereign immunity.  The defendants also have immunity against the plaintiff's state-law claims.  *See supra* Section 3.B.  Finally, she does not allege sufficient facts to support plausible ADA claims against the defendants, and, in any event, Texas Tech and TTUHSC are both immune from those claims.  *See supra* Section 3.C.  Further, to the extent that some defendants did not move to dismiss the claims against them, because the plaintiff failed to prove service on them despite being so ordered, the Court dismisses her claims against them.  In short, the Court grants the defendants' pending motions to dismiss (Dkt. Nos. 81–88), and dismisses the plaintiff's complaint with prejudice.

So ordered on August 23, 2024.

_James W. Hendrix_
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

49